UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MANUEL AQUAPAN, *on behalf of himself,*
*individually*, *and on behalf of all others*
*similarly situated*,

                    Plaintiff,

        -against-

SUNSHINE 39 WINDOWS & GLASS,
INC., and LIM SIEW SENG,

                  Defendants.
--------------------------------------------------------X

REPORT AND
RECOMMENDATION

19 CV 6446 (DLI) (RML)

LEVY, United States Magistrate Judge:

        By order dated January 19, 2021, the Honorable Dora L. Irizarry, United

States District Judge, referred plaintiffs' motion for a default judgment to me for report and

recommendation.  For the reasons stated below, I respectfully recommend that plaintiffs' motion

be granted.  I further recommend that plaintiffs be awarded a total of $155,936.01 in damages,

plus pre-judgment and post-judgment interest.

## BACKGROUND AND FACTS

        Plaintiff Manuel Aquapan commenced this wage and hour action on November 14,

2019, against defendants Sunshine 39 Windows & Glass, Inc. ("Sunshine"), located at 984 39th

Street in Brooklyn, New York, and Lim Siew Seng ("Seng") (together, "defendants"), asserting

claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and the New

York Labor Law ("NYLL"), §§ 190, *et seq.*  (Complaint, dated Nov. 14, 2019 ("Compl."), Dkt.

No. 1.)  That same day, plaintiff Adrian Alvarado (together with Aquapan, "plaintiffs"), filed an

opt-in form and joined the action.  (See Consent to Join Collective Action, dated Nov. 14, 2019,

Dkt. No. 1-2.)  Defendants were properly served with the summons and complaint.  (See

Affidavits of Service of Assmet Abderrahman, sworn to Jan. 24, 2020, Dkt. Nos. 9, 10.)

Defendants are alleged to have employed plaintiffs as laborers: Aquapan from April 2011 to

August 2018 and Alvarado from December 2003 to September 2018.  (Amended Complaint,

dated Apr. 29, 2020 ("Am. Compl."), Dkt. No. 12, ¶¶ 19, 26.)  Defendant Seng is alleged to be

the "owner and the day-to-day overseer of Sunshine."  (Id. ¶ 11.)  Defendants failed to answer or

move with respect to the original complaint.

In April 2020, plaintiff Aquapan sought leave to file an amended complaint

naming Alvarado as a plaintiff.  (Motion for Leave to File Amended Complaint, dated Apr. 27,

2020, Dkt. No. 11.)  The court granted the motion, and on April 29, 2020, plaintiffs filed an

amended complaint.  (See Am. Compl.)  Plaintiffs again properly served the summonses and

amended complaint (see Affidavit of Service of Sean Warner, sworn to May 12, 2020, Dkt. No.

15; Affidavit of Service of Assmet Abderrahman, sworn to Aug. 13, 2020, Dkt. No. 17), and

defendants again failed to respond or otherwise move with respect to the amended complaint.

Plaintiffs then moved for entry of default pursuant to Federal Rule of Civil

Procedure 55(a) on October 26, 2020.  (Request for Certificate of Default, dated Oct. 26, 2020,

Dkt. No. 18.)  On November 2, 2020, the Clerk of the Court noted the defaults of both

defendants.  (Clerk's Entry of Default, dated Nov. 2, 2020, Dkt. No. 20.)  After requesting and

receiving three extensions of time, plaintiffs moved for default judgment on January 13, 2021.

(See Motion for Default Judgment, dated Jan. 12, 2021, Dkt. No. 25 ("Motion").)  Judge Irizarry

referred plaintiffs' motion to me on January 19, 2021.  (Order Referring Motion, dated Jan. 19,

2021.)

Plaintiffs move for default judgment on claims under the FLSA and NYLL. Aquapan seeks default judgment on claims alleging defendants' failures to (1) pay minimum wages, (2) pay overtime wages, (3) pay spread of hours wages, (4) provide a wage notice at the time of his hire, and (5) provide wage statements throughout his employment, all of which allegedly occurred from November 14, 2013 to August 15, 2018.  (Am. Compl. ¶¶ 20-23, 37-71; Motion ¶¶ 28-36, 57-68.)  Alvarado seeks default judgment on claims alleging defendants' failure to (1) pay overtime wages, and (2) provide wage statements, which allegedly occurred from November 14, 2013 to September 7, 2018.  (Am. Compl. ¶¶ 26-29, 32, 37-49, 62-66; Motion ¶¶ 37-39, 69-74.)  Both plaintiffs seek compensatory and liquidated damages for unpaid wages, statutory damages for the failure to provide wage notices and statements, pre- and post-judgment interest on those damages, as well as attorney's fees and costs.  (Motion ¶¶ 77-79, 84-85, 96, 98.)

## DISCUSSION

A.  Liability

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability."  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Where a plaintiff moves for default judgment, the court "is required to accept all of [the plaintiffs'] factual allegations as true and draw all reasonable inferences in [the plaintiffs'] favor."  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).  The court must also "determine whether [the plaintiffs'] allegations establish [the defendants'] liability as a matter of law."  Id.

Here, both plaintiffs meet their respective burdens of pleading.  Aquapan has sufficiently pleaded factual allegations that give rise to liability for unpaid minimum wages

under the NYLL (see Am. Compl. ¶¶ 20-23, 51-54), unpaid overtime wages under the FLSA (id. ¶¶ 20-22, 38-42), unpaid spread of hours wages under the NYLL (id. ¶¶ 20-23, 57-60), and failure to provide wage statements as required by the NYLL (id. ¶¶ 31, 33, 63-66, 68-71). Alvarado has also sufficiently alleged that defendants are liable for unpaid overtime wages and failure to provide wage statements.  (Id. ¶¶ 26-28, 32, 38-42, 63-66.)  The extent to which plaintiffs can recover damages for these violations initially depends on whether: (1) their claims were timely; (2) they are covered employees under the FLSA and the NYLL; and (3) defendants were plaintiffs' employers under the FLSA and NYLL.

1. Timeliness

For claims to be timely under the FLSA, they must have arisen within the two years prior to filing of the complaint, or—for willful violations—within the three years prior.  29 U.S.C. § 255(a).  Here, both plaintiffs allege that defendants willfully violated the FLSA by failing to pay them overtime wages.  (See Am. Compl. ¶¶ 20-22, 26-28, 38-42.)  Defendants have waived any affirmative defense based on the statute of limitations by virtue of their default. See Gunawan v. Sake Sushi Rest., 897 F. Supp. 2d 76, 87 (E.D.N.Y. 2012) (collecting cases). Further, plaintiffs' allegation that defendants were aware of the requirement to pay overtime wages yet "purposefully" did not do so establishes willfulness.  (Am. Compl. ¶ 15); see also Moran v. GTL Constr., LLC, No. 06 CV 168, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007) ("[F]or the purposes of pleading, willfulness qualifies as a factual state of mind falling under Fed. R. Civ. P. 9(b), which states that the 'condition of mind of a person may be averred generally.'").[1]  Because Aquapan and Alvarado allege that they were employed by defendants

---

[1] Rule 9(b) now states, in relevant part, that "conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

and that defendants' non-payment of overtime wages occurred through August and September of 2018, respectively, their claims under the FLSA are timely.

For plaintiffs' claims to be timely under the NYLL, they must have arisen within the six years prior to the filing of the complaint.  See N.Y. LAB. LAW §§ 198(3), 663(3).  Because plaintiffs allege that defendants' violations of the NYLL occurred from November 2013 to September 2018, their claims under the NYLL are also timely.

2.   Coverage Under the FLSA and NYLL

Because the provisions of the FLSA and NYLL apply only to employees of covered employers, plaintiffs must show that (1) they were defendants' employees, and (2) defendants were their employers subject to the coverage of each statute.  First, under the FLSA, an employee is defined as "any individual employed by an employer," meaning any individual whom an employer "suffer[s] or permit[s] to work." 29 U.S.C. §§ 203(e)(1); (g).  The NYLL employs a nearly identical definition.  See N.Y. LAB. LAW § 651(5).  Here, plaintiffs' allegations establish that they worked for defendants: Aquapan from 2011 through 2018 and Alvarado from 2003 through 2018.  (See Am. Compl. ¶¶ 19, 26.)  Thus, both plaintiffs were "employees" within the meaning of the FLSA and NYLL.

Second, plaintiffs' allegations demonstrate that defendants were their employers. To establish that defendants are employers subject to the FLSA and NYLL, plaintiffs must show that defendants "possessed the power to control" their activities as employees considering the totality of pertinent "economic realit[ies]."[2]  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139

---

[2] "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see also Fermin v. Las Delicias Peruanas Rest., Inc., 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); Oaxaca v. Hudson Side Cafe Inc., No. 13 CV 2698, 2018 WL 4859152, at *8 (E.D.N.Y. Oct. 8, 2018).

(2d Cir. 1999) (citation and quotation marks omitted).  To evaluate the "economic reality" of an alleged employee-employer relationship, courts look to various factors, none of which is individually dispositive.  Id.  These factors include "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  Id.  In addition, the FLSA requires employees to show their employer was an enterprise engaged in interstate commerce *or* that their work as employees regularly involved them in interstate commerce.  See 29 U.S.C. § 206(a).

Here, plaintiffs allege the presence of all four factors listed above, substantiating an "economic reality" in which defendants "possessed the power to control" their activities.  Herman, 172 F.3d at 139.  Both plaintiffs assert that defendants hired them, determined their rate of pay, paid them in cash, set their hours, supervised their work, and maintained employment records.  (Declaration of Manuel Aquapan, dated Jan. 12, 2021 ("Aquapan Decl."), Dkt. No. 26, ¶ 4; Declaration of Adrian Alvarado, dated Jan. 12, 2021 ("Alvarado Decl."), Dkt. No. 27, ¶ 4; see also Am. Compl. ¶ 18.)

Plaintiffs have also satisfied the FLSA's interstate commerce requirement.  To show they were "employed in an enterprise engaged in commerce," 29 U.S.C. § 206(a), plaintiffs allege that defendants' annual income exceeded $500,000 during the period within the three-year statute of limitations and that the business was engaged in interstate commerce because defendants "use[d] goods, equipment, and other materials in the course of its business, such as glass, window frames, and tools, much of which originates in states other than New York."  (Am. Compl. ¶ 12.)  Further, plaintiffs allege that they both handled materials that originated out-of-state by "intall[ing] windows, shower doors, and mirrors, and cutting and measuring glass."  (Id. ¶¶ 19, 26; see also Aquapan Decl. ¶ 3; Alvarado Decl. ¶ 3.)  Multiple courts in this Circuit have

6

held that liability may be established in a motion for default judgment where plaintiffs handled goods or items that originated out-of-state.  See Jacobs v. New York Foundling Hosp., 577 F.3d 93, 98-99 n.7 (2d Cir. 2009) (citation omitted); see also Boutros v. JTC Painting & Decorating Corp., 989 F. Supp. 2d 281, 284 (S.D.N.Y. 2013) (finding defendant subject to enterprise coverage where plaintiffs alleged that they used "tools, paint, and other materials that travel in interstate commerce"); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) (holding that the interstate commerce test "is met if Plaintiffs merely handled supplies or equipment that originated out-of-state . . . . The Court finds it logical to infer here that the cleaning supplies utilized by the Plaintiffs originated outside of New York.").  I find it is reasonable to infer that the goods allegedly handled by plaintiffs "have been moved in or produced for [interstate] commerce." 29 U.S.C. § 203(s)(1)(A)(i).  Plaintiffs have therefore sufficiently established that they are covered employees under the FLSA and NYLL.

       3.  Joint and Several Liability

       Lastly, plaintiffs sufficiently allege that defendants were a single integrated enterprise for the purposes of joint and several liability under both the FLSA and NYLL.  "The overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, [and is therefore] jointly and severally liable under the FLSA for unpaid wages."  Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002).  "In the context of a default, [joint and several] liability may be established based on limited detail about the relationship of defendants."  Nuriddinov v. Masada III, Inc., No. 15 CV 5875, 2017 WL 9253401, at *6 (E.D.N.Y. July 24, 2017) (citation omitted).  Here, plaintiffs allege that individual defendant Seng owned corporate defendant Sunshine and "manage[d] and overs[aw]" Sunshine's day-to-day operations, employee pay, and all other personnel decisions.  (Am. Compl. ¶¶ 11, 18.)  These allegations sufficiently establish defendants'

common ownership, management, and control of labor relations, which is "the central concern . . . underlying the single employer doctrine." Marin v. APU Foods Corp., No. 17 CV 3224, 2018 WL 1462236, at *2 (E.D.N.Y. Feb. 26, 2018) (internal quotation marks and citations omitted). Therefore, I respectfully recommend that defendants be held jointly and severally liable.

B. Damages

Once it determines that the defaulting defendants are liable, "the court must conduct an inquiry to establish damages to a 'reasonable certainty.'" Gunawan, 897 F. Supp. 2d at 83 (quoting Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999)). "[T]he quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation." Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974). "The burden is on the plaintiff[s] to establish [their] entitlement to recovery." Bravado Int'l Grp. Merch. Servs. v. Ninna, Inc., 655 F. Supp. 2d 177, 189 (E.D.N.Y. 2009).

Here, the damages claimed are made readily calculable by the plaintiffs' factual allegations. Plaintiff Aquapan requests $39,189.54 in damages: $14,594.77 in compensatory damages for unpaid minimum, overtime, and spread of hours wages; $14.594.77 in liquidated damages; and $10,000 in statutory damages for defendants' failure to provide wage notices and statements. (Motion ¶ 144.) Plaintiff Alvarado requests $99,755.58 in damages: $47,377.79 in compensatory damages for unpaid overtime wages: $47,377.79 in liquidated damages; and $5,000 in statutory damages for defendants' failure to provide wage statements. (Id.) Both plaintiffs also request pre- and post-judgment interest, as well as attorney's fees and costs. (Id.) I address each of plaintiffs' requests by category of damages.

1. Compensatory Damages for Unpaid Wages

In the absence of any records and in light of defendants' default, plaintiffs' recollections suffice to establish damages for unpaid wages. "[W]hen an employer fails to

8

maintain accurate records or where . . . no records have been produced as a consequence of a

defendant's default, courts have held that the 'plaintiff's recollection and estimates of hours

worked are presumed to be correct.'" Gunawan, 897 F. Supp. 2d at 88 (quoting Zeng Liu v. Jen

Chu Fashion Corp., No. 00 CV 4221, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)); see also

Kim v. Kum Gang, Inc., No. 12 CV 6344, 2015 WL 2222438, at *25 (S.D.N.Y. Mar. 19, 2015)

(noting that where an employer fails to maintain records of wages and hours, plaintiffs "need only

prove that they performed work for which they were not properly compensated and produce

sufficient evidence to show the amount and extent of that work as a matter of just and reasonable

inference") (internal quotation marks and citations omitted).

     a.  Aquapan's Compensatory Damages

       i.  *Unpaid Minimum Wages*

Plaintiff Aquapan asserts that he worked for defendants on a seasonal basis from

April through November, except for 2013 (when he only worked in November) and 2018 (when

he was terminated in August).  (See Am. Compl. ¶¶ 20-22; Aquapan Decl. ¶¶ 5, 7, 9.)  Aquapan

avers that he worked six (6) days per week during the months of November 2013 and April

through November 2014, and five (5) days per week during the months of April through

November 2015, April through November 2016, April through November 2017, and April

through August 15, 2018.  (See Am. Compl. ¶¶ 20-21; Aquapan Decl. ¶¶ 5, 7.)

Aquapan alleges that defendants paid him a daily rate instead of an hourly wage,

and that the daily rate increased from $70 in 2013 to $135 in 2018, with various other rates in the

intervening years.  (See Am. Compl. ¶ 22; Aquapan Decl. ¶ 9.)  Where an employee receives a

daily (rather than hourly) wage, the New York Administrative Code directs courts to calculate the

employee's "regular rate" of pay – in other words, their actual hourly wage – "by dividing the

total hours worked during the week [by] the employee's total earnings."  N.Y. Comp. Codes R. &

Regs. ("N.Y.C.R.R.") tit. 12, § 142-2.16 (2016); Bedasie v. Mr. Z Towing, Inc., No. 13 CV 5453,

2017 WL 1135727, at *22 (E.D.N.Y. Mar. 24, 2017).

   But calculating Aquapan's regular rate also requires accounting for the "production

bonus[es]" ranging from $20 to $30 that he received from defendants "approximately one to two

times per month."[3]  (Am. Compl. ¶ 22.)  Aquapan alleges that these bonuses were fixed between

$20 and $30 and bore no relation to the amount of overtime hours he worked.  (Id. ¶¶ 2, 22.)

Because the bonuses did not "fluctuate based on the number of overtime hours" that Aquapan

worked, "they cannot qualify as overtime payments." Ying Ying Dai v. ABNS NY Inc., 490 F.

Supp. 3d 645, 658 (E.D.N.Y. 2020) (quoting McLean v. Garage Mgmt. Corp., 819 F. Supp. 2d

332, 339 (S.D.N.Y. 2011) (citing 29 C.F.R. §§ 778.110(b), 778.209(a))).  Instead, they must

factor into determining Aquapan's regular rate of pay.  See 29 C.F.R. § 778.310 ("[W]here extra

compensation is paid in the form of a lump sum for work performed in overtime hours, it must be

included in the regular rate and may not be credited against statutory overtime compensation

due.").  This court has applied federal regulations to claims arising under the NYLL and reached

the same conclusions that extra lump sum payments only count toward an employee's regular rate

and should not be classified as overtime wages.  See Hernandez v.  NJK Contractors, Inc., No. 09

CV 4812, 2013 WL 12363005, at *5 (E.D.N.Y. Feb. 12, 2013) (holding that annual bonuses do

not count as overtime wages); Ying Ying Dai, 490 F. Supp. 3d at 658 (same).  Further, the New

York Administrative Code, which directs courts to account for an employee's "*total* earnings"

---

[3] The Amended Complaint sets forth contradictory assertions that defendants paid these
production bonuses "occasional[ly]" each week, but also "approximately one to two times per
month."  (Am. Compl. ¶¶ 2, 22.)  Also somewhat confusingly, Aquapan fails to mention these
production bonuses in his Motion for Default Judgment and in his Declaration, despite
describing them in both the Original and Amended Complaints.  (See Compl. ¶¶ 2, 22; Am.
Compl. ¶¶ 2, 22.)

when determining their "regular rate" of pay, can reasonably be interpreted to concur with federal

regulations that count additional lump sum payments toward an employee's regular rate of pay.

N.Y.C.R.R. tit. 12, § 142-2.16 (2016) (emphasis added).

Given that Aquapan's description of the monthly bonus payments as

"approximate[]" is more concrete than his description of weekly bonuses as "occasional,"  (Am.

Compl. ¶¶ 2, 22), I respectfully recommend that the court assume Aquapan received $40 per

month as a production bonus for the purpose of calculating damages.  This amount strikes a

balance between the lowest possible monthly bonus Aquapan received (one $20 payment) and the

highest (two $30 payments).  To calculate Aquapan's regular rate of pay, I recommend that the

court treat these production bonuses as an additional $10 per week.  Table 1, below, reflects

Aquapan's recollections of the daily rate paid to him by defendants and my calculations of his

weekly pay during each period:

| TABLE 1:  AQUAPAN'S DAILY WAGES | | | | |
|---|---|---|---|---|
| **Dates** | **Days Worked Per Week** | **Rate of Pay (Daily/Weekly) (before bonuses)** | **Average Bonuses (Monthly/Weekly)** | **Weekly Pay (after bonuses)** |
| Nov. 14–30, 2013 | 6 | $70 / $420 | $40 / $10 | $430 |
| Apr. – June 2014 | 6 | $70 / $420 | $40 / $10 | $430 |
| July – Nov. 2014 | 6 | $100 / $600 | $40 / $10 | $610 |
| Apr. – Nov. 2015 | 5 | $100 / $500 | $40 / $10 | $510 |
| Apr. – Nov. 2016 | 5 | $100 / $500 | $40 / $10 | $510 |
| Apr. – Nov. 2017 | 5 | $120 / $600 | $40 / $10 | $610 |
| Apr. – May 2018 | 5 | $120 / $600 | $40 / $10 | $610 |
| June – Aug. 15, 2018 | 5 | $135 / $675 | $40 / $10 | $685 |

(See Am. Compl. ¶ 22; Aquapan Decl. ¶ 9.)

At all relevant times, the FLSA required defendants to pay Aquapan a minimum

hourly wage of $7.25.  29 U.S.C. § 206(a)(1).  But New York law obligated defendants to pay

Aquapan a minimum hourly wage of $8.00 in 2014, $8.75 in 2015, $9.00 in 2016, $10.50 in 2017,

and $12.00 in 2018.  N.Y. LAB. LAW § 652.[4]  Because New York's minimum wage is higher,

plaintiff may recover that amount.  29 U.S.C. § 218(a); see also Gunawan, 897 F. Supp. 2d at 89.

Here, Aquapan asserts that he worked six (6) days per week during the months of

November 2013 and April through November 2014.  (See Am. Compl. ¶ 20; Aquapan Decl. ¶ 5.)

Aquapan recalls that he worked an average of sixty-four (64) hours per week during these months.

(See Aquapan Decl. ¶ 6.)  During the months of April through November 2015, April through

November 2016, April through November 2017, and April through August 15, 2018, Aquapan

asserts that he worked five (5) days per week, averaging fifty-two and three-quarters (52.75)

working hours per week.  (See Am. Compl. ¶ 21; Aquapan Decl. ¶ 7.)

"Once the court has determined an employee's regular rate of pay, the court then

compares this rate with the minimum wage under federal and state law for the respective time

periods."  Bedasie, 2017 WL 1135727, at *22 (citing Heng Guo Jin v. Han Sung Sikpoom

Trading Corp., No. 13 CV 6789, 2015 WL 5567073, at *8 (E.D.N.Y. Sept. 21, 2015)).  Table 2,

below, reflects the precise number of weeks Aquapan worked each period,[5] and for each period,

his weekly pay, average hours per week, and regular rate.  Table 2 also reflects the minimum

wage under the NYLL for each year and the difference between Aquapan's regular rate and the

relevant minimum wage, with negative values enclosed in parentheses.  In the right-most column,

Table 2 reflects the amount of minimum wages that defendants failed to pay Aquapan during each

[4] Because plaintiffs aver that defendants employed fewer than eleven employees at all times during their employment, defendants qualify as "Small employers" under the NYLL.  (Am. Compl. ¶ 22; Aquapan Decl. ¶ 13); N.Y. LAB. LAW § 652(a)(ii).

[5] For the purposes of damages calculations, I computed the number of weeks that Aquapan worked during each of these periods by dividing the number of days in each period by seven (7) and rounding to the hundredth decimal.  I note that for each month except for November 2013 (when Aquapan worked from November 14-30) and August 2018 (when Aquapan worked August 1-15), Aquapan was employed the entire month.  (See Aquapan Decl. ¶¶ 5, 7.)

12

time period, which I calculated using the following formula: unpaid minimum wages = weeks *

(difference * average hours per week).

| Table 2:  Aquapan's Minimum Wage Calculations | | | | | | |
|---|---|---|---|---|---|---|
| **Dates** | **Weekly Pay** | **Avg. Hours/Week** | **Regular Rate** | **Min. Wage (NYLL)** | **Difference** | **Unpaid Min. Wages** |
| Nov. 14–30, 2013 *(2.29 weeks)* | $430 | 64 | $6.72 | $7.25[6] | ($0.53) | $77.68 |
| Apr. – June 2014 *(12.86 weeks)* | $430 | 64 | $6.72 | $8.00 | ($1.28) | $1,053.49 |
| July – Nov. 2014 *(21.71 weeks)* | $610 | 64 | $9.53 | $8.00 | $1.53 | $0 |
| Apr. – Nov. 2015 *(34.71 weeks)* | $510 | 52.75 | $9.67 | $8.75 | $0.92 | $0 |
| Apr. – Nov. 2016 *(34.71 weeks)* | $510 | 52.75 | $9.67 | $9.00 | $0.67 | $0 |
| Apr. – Nov. 2017 *(34.71 weeks)* | $610 | 52.75 | $11.56 | $10.50 | $1.06 | $0 |
| Apr. – May 2018 *(8.57 weeks)* | $610 | 52.75 | $11.56 | $12.00 | ($0.44) | $198.91 |
| June – Aug. 15, 2018 *(10.71 weeks)* | $685 | 52.75 | $12.99 | $12.00 | $0.99 | $0 |
| | | | | | | **$1,330.08 (Total)** |

(See Am. Compl. ¶¶ 20-22; Aquapan Decl. ¶¶ 5-9; Motion ¶¶ 29-33, 58.)

As reflected above in Table 2, defendants paid Aquapan less than the required

minimum wage during the months of November 2013, April through June 2014, and April

through May 2018.  (See Motion ¶ 58.)  But Aquapan's hourly wage exceeded the minimum

wage from July through November 2014, all relevant months from 2015 through 2017, and June

through August 2018.  During those periods, he did not incur any damages with respect to unpaid

minimum wages.  Therefore, I respectfully recommend that Aquapan be awarded $1,330.08 in

---

[6] In 2013, the NYLL set forth a minimum wage of $7.15 per hour and the FLSA $7.25 per hour. Because Section 652(1) of the NYLL directs employers to pay the federal minimum wage when it is greater than New York's, the FLSA's rate applies for 2013.  N.Y. Lab. Law § 652(1).

unpaid minimum wages: $77.68 for his work for defendants in November 2013, $1,053.49 for

April through June 2014, and $198.91 for April through May 2018.

         *ii.    Unpaid Overtime Wages*

         Aquapan further alleges that defendants never paid him an overtime premium for

the hours he worked in excess of forty (40) hours per week.  (See Am. Compl. ¶ 22; Aquapan

Decl. ¶ 9.)  Here too, federal and state law establish that Aquapan's damages are to be determined

according to his regular rate of pay.  See 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112 ("If the

employee is paid a flat sum . . . his regular rate is determined by totaling all the sums received at

such day rates or job rates in the workweek and dividing by the total hours actually worked.  He is

then entitled to extra half-time pay at this rate for all hours worked in excess of 40 in the

workweek.").  The Second Circuit has held that the NYLL incorporates the FLSA standard.

Nakahata v. New York Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013)

(citing N.Y.C.R.R. tit. 12, § 142-2.2 (2016) ("An employer shall pay an employee for overtime at

a wage rate of one and one-half times the employee's regular rate . . . .")).  When an employee's

regular rate was less than the applicable minimum wage, this court has used the minimum wage to

calculate overtime pay for the relevant time period.  See, e.g., Ying Ying Dai, 490 F. Supp. 3d at

655-58.  Because Aquapan's regular rate of pay fell short of the required minimum wage during

November 2013, April through June 2014, and April through May 2018 (as reflected in Table 2),

I used the applicable minimum wage for those periods to calculate his overtime damages.  For all

other relevant periods, I used Aquapan's regular rate of pay.  I calculate Aquapan's overtime

damages in Table 3 using the following formula: unpaid overtime wages = weeks * (overtime

premium * average overtime hours per week).

| TABLE 3: AQUAPAN'S OVERTIME WAGE CALCULATIONS | | | | | |
|---|---|---|---|---|---|
| Dates | Regular Rate | Min. Wage (NYLL) | OT Premium | Average OT Hours/Week | Unpaid OT Wages |
| Nov. 14–30, 2013 *(2.29 weeks)* | $6.72 | $7.25[7] | $3.63 | 24 | $199.50 |
| Apr. – June 2014 *(12.86 weeks)* | $6.72 | $8.00 | $4.00 | 24 | $1,234.56 |
| July – Nov. 2014 *(21.71 weeks)* | $9.53 | $8.00 | $4.77 | 24 | $2,485.36 |
| Apr. – Nov. 2015 *(34.71 weeks)* | $9.67 | $8.75 | $4.84 | 12.75 | $2,141.95 |
| Apr. – Nov. 2016 *(34.71 weeks)* | $9.67 | $9.00 | $4.84 | 12.75 | $2,141.95 |
| Apr. – Nov. 2017 *(34.71 weeks)* | $11.56 | $10.50 | $5.78 | 12.75 | $2,557.95 |
| Apr. – May 2018 *(8.57 weeks)* | $11.56 | $12.00 | $6.00 | 12.75 | $655.61 |
| June – Aug. 15, 2018 *(10.71 weeks)* | $12.99 | $12.00 | $6.50 | 12.75 | $887.59 |
| | | | | | **$12,304.47 (Total)** |

(See Am. Compl. ¶¶ 20-22; Aquapan Decl. ¶¶ 5-9; Motion ¶¶ 29-33, 59.)

Based on the calculations above, I respectfully recommend that Aquapan be awarded $12,304.47 in unpaid overtime wages: $199.50 for his work in November 2013, $1,234.56 for his work from April to June 2014, $2,485.36 for his work from July through November 2014, $2,141.95 for his work from April through November 2015, $2,141.95 for his work from April through November 2016, $2,557.95 for his work from April through November 2017, $655.61 for his work during April and May of 2018, and $887.59 for his work from June through August 2018.

   *iii. Unpaid Spread of Hours Wages*

Next, Aquapan claims that he is entitled to unpaid spread of hours wages under N.Y.C.R.R. tit. 12, § 142-2.4.  (Am. Compl. ¶¶ 57-60; Motion ¶¶ 55-56.)  That provision requires

---

[7] See supra, note 5.

employers to pay employees "one hour's pay at the basic minimum hourly wage rate. . . for any day in which [ ] the spread of hours exceeds 10 hours."  N.Y.C.R.R. tit. 12, § 142-2.4.  "[T]he weight of authority in this Circuit holds that '[a] limitation upon a plaintiff's eligibility to recover for spread-of-hours pay is that the plaintiff not earn more than the minimum wage.'"  Tan v. Voyage Express Inc., No. 15 CV 6202, 2017 WL 2334969, at *3 (E.D.N.Y. May 25, 2017) (quoting Luna v. Gon Way Constr., No. 16 CV 1411, 2017 WL 835321, at *11 (E.D.N.Y. Feb. 14, 2017), report and recommendation adopted,  2017 WL 835174 (E.D.N.Y. Mar. 2, 2017)); see also Rivera v. Harvest Bakery Inc., No. 13 CV 691, 2018 WL 4214337, at *5 (E.D.N.Y. Aug. 17, 2018), report and recommendation adopted, 2018 WL 4211301 (E.D.N.Y. Sept. 4, 2018) ("The spread of hours pay has been determined to only apply 'to those employees making minimum wage and not to those making more than minimum wage.'") (quoting Shu Qin Xu v. Wai Mei Ho, 111 F. Supp. 3d 274, 281 (E.D.N.Y. 2015)).

Here, Aquapan alleges that defendants never paid him spread of hours wages throughout his employment, even though he regularly worked shifts longer than ten hours from beginning to end.  (See Am. Compl. ¶ 23; Aquapan Decl. ¶ 9.)  Because Aquapan's regular rate was below the minimum wage in November of 2013, April through June of 2014, and April through May of 2015, he is entitled to recover unpaid spread of hours wages for those periods. However, he may not recover spread of hours wages for his work from July of 2014 through November of 2017 and June through August of 2018.

Aquapan recalls working an average of five (5) shifts per week that exceeded ten hours from beginning to end in 2013 and 2014.  (Aquapan Decl. ¶¶ 5-6; Motion ¶¶ 29-20.)  In April through May of 2018, he typically worked three (3) such shifts per week.  (Aquapan Decl. ¶¶ 7-8; Motion ¶¶ 31-32.)  Table 4, below, reflects the unpaid spread of hours wages to which

16

Aquapan is entitled, using the following formula:  unpaid spread of hours wages = weeks *

(minimum wage * shifts/week > 10 hours).

| TABLE 4:  AQUAPAN'S  SPREAD OF HOURS CALCULATIONS | | | | |
|---|---|---|---|---|
| **Dates** | **Regular Rate** | **Min. Wage (NYLL)** | **Shifts/Week > 10 hours** | **Unpaid Spread of Hours Wages** |
| Nov. 14–30, 2013 *(2.29 weeks)* | $6.72 | $7.25[8] | 5 | $83.01 |
| Apr. – June 2014 *(12.86 weeks)* | $6.72 | $8.00 | 5 | $514.40 |
| July – Nov. 2014 *(21.71 weeks)* | $9.53 | $8.00 | 5 | $0 |
| Apr. – Nov. 2015 *(34.71 weeks)* | $9.67 | $8.75 | 3 | $0 |
| Apr. – Nov. 2016 *(34.71 weeks)* | $9.67 | $9.00 | 3 | $0 |
| Apr. – Nov. 2017 *(34.71 weeks)* | $11.56 | $10.50 | 3 | $0 |
| Apr. – May 2018 *(8.57 weeks)* | $11.56 | $12.00 | 3 | $308.52 |
| June – Aug. 15, 2018 *(10.71 weeks)* | $12.99 | $12.00 | 3 | $0 |
| | | | | **$905.93 (Total)** |

Based on the calculations above, I respectfully recommend that Aquapan be

awarded $905.93 in unpaid spread of hours wages: $83.01 for his work in November 2013,

$514.40 for his work from April to June 2014, and $308.52 for his work during April and May of

2018.

      b.   <u>Alvarado's Compensatory Damages</u>

      i.   *Unpaid Overtime Wages*

Plaintiff Alvarado alleges that defendants never paid him an overtime premium for

the hours he worked in excess of forty.  (Am. Compl. ¶ 28; Alvarado Decl. ¶ 7.)  Alvarado asserts

---

[8] <u>See</u> <u>supra</u>, note 5.

that he worked for defendants from November 14, 2013 through September 7, 2018, on a non-seasonal, year-round basis.  (Am. Compl. ¶¶ 27-28; Alvarado Decl. ¶¶ 5, 7; Motion ¶¶ 37-40.) Throughout the entirety of his employment with defendants, Alvarado worked six (6) days per week, averaging sixty-six (66) working hours per week.  (Am. Compl. ¶ 27; Alvarado Decl. ¶¶ 5-6; Motion ¶¶ 38-39.)  Similarly to Aquapan, defendants paid Alvarado a fixed daily wage which increased throughout his employment: $135 per day from November 14, 2013 through December 31, 2014; $160 per day from January 1, 2015 through December 31, 2017; and $200 per day from January 1, 2018 through September 7, 2018.  (Am. Compl. ¶ 28; Alvarado Decl. 7.)  Defendants also paid Alvarado the same $20-$30 production bonus approximately one to two times each month that they paid Aquapan.  (Am. Compl. ¶ 28.)

As discussed above, Alvarado's damages for unpaid overtime wages are to be determined according to his regular rate of pay.  See discussion supra Section B.1.a.ii; see also 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112.  Treating the production bonuses as $40 per month ($10 per week) as with Aquapan's damages, Alvarado's regular rates for each period are as follows: $12.42 per hour from November 14, 2013 through December 31, 2014; $14.69 per hour from January 1, 2015 through December 31, 2017; and $18.33 per hour from January 1 through September 7, 2018.  Because Alvarado's regular rate exceeded the minimum wage at all relevant times, his overtime premiums are determined by his regular rate of pay.  Table 5, below, reflects Alvarado's regular rates, overtime premiums, and unpaid overtime wages for all relevant periods. I calculated his damages for unpaid overtime wages using the following formula: unpaid overtime wages = weeks * (overtime premium * avg. overtime hours per week).

18

| TABLE 5: ALVARADO'S OVERTIME WAGE CALCULATIONS | | | | |
|---|---|---|---|---|
| Dates[9] | Hourly Rate | OT Premium | Avg. OT Hours/Week | Unpaid OT Wages |
| Nov. 14, 2013 – Dec. 31, 2014 *(58.86 weeks)* | $12.42 | $6.21 | 26 | $9,503.54 |
| Jan. 1, 2015 – Dec. 31, 2017 *(156.43 weeks)* | $14.69 | $7.35 | 26 | $29,893.77 |
| Jan. 1, 2018 – Sept. 7, 2018 *(35.57 weeks)* | $18.33 | $9.17 | 26 | $8,480.60 |
| | | | | **$47,877.91** |

Based on the calculations above, I respectfully recommend that Alvarado be awarded $47,877.91 in unpaid overtime wages: $9,503.54 for his work from November 14, 2013 through December 31, 2014; $29,893.77 for his work from January 1, 2015 through December 31, 2017; and $8,480.60 for his work from January 1, 2018 through September 7, 2018.

　　　2. Liquidated Damages

Both Aquapan and Alvarado also request liquidated damages under the NYLL. (Motion ¶¶ 75-78.)  The NYLL allows plaintiffs to recover liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. LAB. LAW § 663.  By nature of their default, defendants have failed to demonstrate such a good faith basis.  Moreover, plaintiffs have alleged that defendants' non-payment of overtime wages was willful, as they were aware of their legal obligation to pay plaintiffs overtime premiums.  (Am. Compl. ¶¶ 15-16.)  See Mahoney v. Amekk Corp., No. 14 CV 4131, 2016 WL 6585810, at *15 (E.D.N.Y. Sept. 30, 2016) (permitting liquidated damages for unpaid minimum wages under NYLL where plaintiff alleged violations were willful and defendants failed to appear), report and recommendation adopted, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016).

---

[9] See supra note 4.

I accordingly recommend that plaintiff Aquapan be awarded liquidated damages totaling $14,540.48: $1,330.08 in unpaid minimum wages, $12,304.47 in unpaid overtime wages, and $905.93 in unpaid spread of hours wages.  I also recommend that plaintiff Alvarado be awarded liquidated damages in the amount of $47,877.91 for his unpaid overtime wages.

3.   Statutory Damages

a.   *Wage Notice*

Next, plaintiff Aquapan seeks $5,000 in statutory damages for defendants' failure to provide him with a wage notice.  (Am. Compl. ¶¶ 33, 68-71.)  New York's Wage Theft Prevention Act ("WTPA") requires employers to "provide [their] employees, in writing . . . a notice containing . . . the rate or rates of pay thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other allowances."  N.Y. LAB. LAW § 195(1).  Employers are required to provide such written wage notices "at the time of hiring."  N.Y. LAB. LAW § 195(1).  Aquapan asserts that he did not receive a wage notice from defendants when he was hired.  (Am. Compl. ¶¶ 33, 68-71; Aquapan Decl. ¶ 12.)

Although the WTPA provides for statutory damages for wage notice violations in the amount of $50 per day up to a maximum of $5,000, that provision only took effect on April 9, 2011.  N.Y. LAB. LAW § 198(1-b) (amending N.Y. LAB. LAW § 198 (2011)).  Here, Aquapan asserts that he began working for defendants in April 2011 but does not specify on which day he started.  (Am. Compl. ¶¶ 2, 19.)  Because Aquapan bears the burden of pleading and specifically asks the court to assume that he began working on April 1st every year from 2014 through 2018 for the purpose of calculating his wage damages, I find that Aquapan has not pled sufficient facts regarding his start date to merit damages on this claim.  I respectfully recommend that the court not award him any damages for defendants' failure to provide a wage notice at the time of his hire.

b. *Wage Statements*

Both plaintiffs seek statutory damages for defendants' failure to furnish them with wage statements throughout their respective periods of employment. In addition to the wage notice requirement, "[e]mployers are also required to provide employees with a wage statement with each payment of wages." Pastor v. Alice Cleaners, Inc., No. 16 CV 7264, 2017 WL 5625556, at *5 (S.D.N.Y. Nov. 21, 2017) (citing N.Y. LAB. LAW § 195(3)). Each wage statement must list, among other things, the dates of work covered by the payment of wages, the rate of pay and basis thereof, gross wages, applicable deductions, and allowances claimed as part of the minimum wage. N.Y. LAB. LAW § 195(3). Both Aquapan and Alvarado allege that defendants never provided them with wage statements. (Am. Compl. ¶¶ 31-32, 63-66; Aquapan Decl. ¶ 11; Alvarado Decl. ¶ 9.) As of February 27, 2015, "an employee can recover $250 for each workday that a wage statement violation occurs or continues to occur, not to exceed $5,000." Pastor, 2017 WL 5625556, at *5 (citing N.Y. LAB LAW § 198(1–d)). Because plaintiffs both worked more than twenty days, I find that they are each entitled to $5,000 for defendants' wage statement violations.

4. Pre-judgment Interest

Plaintiffs also request pre-judgment interest under the NYLL. See N.Y. LAB. LAW § 663. Plaintiffs may recover both pre-judgment interest and liquidated damages under the NYLL because the measures serve the two distinct purposes of "compensate[ing] a plaintiff for the loss of use of money" and "a penalty," respectively. Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citation omitted); see also Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 243 (S.D.N.Y. 2020). However, liquidated damages do not factor into the calculation of pre-judgment interest; instead, that calculation is based solely on unpaid wages. Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 49 (E.D.N.Y. 2015) (quoting Mejia

21

v. East Manor USA Inc., No. 10 CV 4313, 2013 WL 3023505, at *8 n.11 (E.D.N.Y. Apr. 19,

2013), report and recommendation adopted, 2013 WL 2152176 (E.D.N.Y. May 17, 2013)).  Nor

is pre-judgment interest calculated on statutory damages for failure to provide wage statements.

See Feuer v. Cornerstone Hotels Corp., No. 14 CV 5388, 2020 WL 401787, at *12 (E.D.N.Y. Jan.

21, 2020) (citing Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 515 (S.D.N.Y. 2017), aff'd,

752 F. App'x 33 (2d Cir. 2018)).

   The statutory rate of interest is nine percent per annum.  N.Y. C.P.L.R. § 5004.

Where damages were incurred at various times, "interest shall be computed upon each item from

the date it was incurred or upon all of the damages from a single reasonable intermediate date."

Id. § 5001(b).  Generally, the midpoint of a plaintiff's employment is a reasonable intermediate

date for purposes of calculating pre-judgment interest.  See Fermin, 93 F. Supp. 3d at 49; Ying

Ying, 490 F. Supp. 3d at 662.

   Calculating Aquapan's pre-judgment interest raises the question of how to

determine the mid-point of several non-continuous periods of employment.  Aquapan suggests

that the court calculate pre-judgment interest from the midpoint of each respective period, using

the amount of damages incurred during each period.  (See Motion ¶¶ 87-93.)  However, he does

not offer any reasons or cite to any authority to explain why this approach "makes sense."  (Id. ¶

87.)  Indeed, it does not resolve the issue of interest accruing over several periods of time during

which Aquapan did not work for defendants.  Instead, Aquapan's method results in multiple

interest rates accruing during overlapping time periods, as well as an unprecedented, aggregated

interest rate for the period between the filing of the present motion and the court's judgment.  (Id.

¶ 93.)

   The standard approach set forth in Section 5004 of New York's Civil Practice Law

and Rules is more straightforward and applicable to this scenario.  Section 5004 provides that a

"*single* reasonable intermediate date" may be used to calculate damages "incurred at various times." N.Y. C.P.L.R. § 5004 (emphasis added). By its plain meaning, this standard approach may be used to calculate damages based on Aquapan's total compensatory damages from the intermediate date between November 14, 2013 and August 15, 2018 – the first and last date of employment for which he can recover damages – even though those damages were incurred at various times. That intermediate date is March 30, 2016. I therefore respectfully recommend that pre-judgment interest be awarded on Aquapan's unpaid compensatory wages of $14,540.48 from March 30, 2016 to the date of judgment at a per diem interest rate of $3.59 ($14,540.48 x 0.09/365).

Because Alvarado worked continuously from November 14, 2013 to September 7, 2018, calculating the midpoint of his employment is simple. It is April 11, 2016. I therefore respectfully recommend that pre-judgment interest be awarded on Alvarado's unpaid overtime wages of $47,877.91 from April 11, 2016 to the date of judgment at a per diem interest rate of $11.81 ($47,877.91 x 0.09/365).

5. Post-Judgment Interest

Plaintiffs are also entitled to post-judgment interest under 28 U.S.C. § 1961(a). Section 1961 provides that "interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Under the statute, interest is calculated "from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[ ] the date of the judgment." Id. Accordingly, I respectfully recommend that plaintiffs be awarded statutory post-judgment interest. See Fermin, 93 F. Supp 3d at 53 (finding that post-judgment interest is mandatory).

6.  <u>Attorney's Fees and Costs</u>

Plaintiffs request and are entitled to recover reasonable attorney's fees and costs under both statutes.  <u>See</u> 29 U.S.C. § 216(b); N.Y. LAB. LAW §§ 198, 663(1)).  Plaintiffs seek an award of attorney's fees in the amount of $20,000 and costs in the amount of $1,099.23.  (Motion ¶¶ 107, 139.)

As a threshold matter, the party seeking fees must provide accurate, detailed, and contemporaneous attorney time records.  <u>See</u> <u>Scott v. City of New York</u>, 643 F.3d 56, 58-59 (2d Cir. 2011) (per curiam); <u>Green v. City of New York</u>, 403 F. App'x 626, 630 (2d Cir. 2010); <u>N.Y. State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983); <u>In re Phelan</u>, 570 N.Y.S.2d 202, 203 (2d Dep't 1991).  Plaintiff has satisfied this requirement.  (<u>See</u> Ex. K to Motion, dated Jan. 13, 2021("Attorney Time Records"), Dkt. No. 25-11.)

The court next assesses whether plaintiffs' counsel request a reasonable hourly rate.  A reasonable hourly rate is "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008).  Reasonable hourly rates should be based on "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  <u>Cruz v. Local Union No. 3 of IBEW</u>, 34 F.3d 1148, 1159 (2d Cir. 1994) (citing <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984)).  A judge may determine prevailing rates based on evidence presented or his or her own knowledge of rates charged in the community.  <u>Chambless v. Masters, Mates & Pilots Pension Plan</u>, 885 F.2d 1053, 1059 (2d Cir. 1989).  The "community" is generally considered to be the district where the court sits.  <u>See</u> <u>Arbor Hill</u>, 522

F.3d at 190.  Also, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate."  Arbor Hill, 522 F.3d at 184 n.2 (citations omitted).

Plaintiffs request reimbursement for their counsel at Borrelli & Associates, P.L.L.C. at the following rates: $400 per hour for managing partner Michael J. Borelli, $350 per hour for partner Alexander T. Coleman, $300 per hour for senior associate Caitlin Duffy, $200 per hour for junior associate David R. Contino, and $90 per hour for paralegal Luiggi Tapia. (Motion ¶¶ 118, 124, 129, 132, 135.)  This court typically approves rates within this range and has previously approved nearly identical rates for these same attorneys.  See Diaz v. KC Plumbing, LLC, No. 19 CV 4321, Dkt. No. 28, at 30-31 (E.D.N.Y. Mar. 1, 2021); Tejada v. La Selecta Bakery, Inc., No. 17 CV 5882, 2020 WL 7249393, at *5 (E.D.N.Y. Sept. 23, 2020).

Further, plaintiffs' counsel not only omitted some charges from their request, but they also reduced the request from $37,420 to $20,000 in an exercise of judgment.  (Motion ¶ 107.)  Indeed, in a similar case involving FLSA claims brought by plaintiffs represented by the same counsel as here, this court found a similar reduction in the amount of attorney's fees reasonable.  See Tejada, 2020 WL 7249393, at *5.  Although I find that the hours billed in this case, 181.90, are excessive based on my experience with wage and hours cases, I find plaintiffs' reduced request of $20,000 reasonable.  I therefore respectfully recommend that plaintiffs be awarded attorney's fees in the amount of $20,000.

Plaintiffs also request $1,099.23 in costs comprising charges for filing fees, service of process, postage, and Westlaw expenses.  (Motion ¶ 139; see also Ex. M to Motion, Dkt. No. 25-13.)  Costs are available for prevailing plaintiffs under the FLSA and NYLL when they are tied to "identifiable, out-of-pocket disbursements."  Jemine v. Dennis, 901 F. Supp. 2d 365, 394 (E.D.N.Y. 2012) (quoting Moon v. Kwon, 99 CV 11810, 2002 WL 31512816, at *8 (S.D.N.Y.

Nov. 8, 2002)); see also 29 U.S.C. § 216(b); N.Y. LAB. LAW § 198.  Court filing fees, service of

process fees, and postage are all routinely recoverable.  See Zurita v. High Definition Fitness Ctr.,

Inc., 13 CV 4394, 2016 WL 3619527, at *11 (E.D.N.Y. June 9, 2016), report and

recommendation adopted, 2016 WL 3636020 (E.D.N.Y. June 29, 2016); Fermin, 93 F. Supp. 3d

at 52.  The Second Circuit has approved the inclusion of electronic research charges in requests

for attorney's fees.  Arbor Hill, 369 F.3d at 98.  I find the amount of costs plaintiffs request

reasonable, and accordingly recommend that plaintiffs be awarded $1,099.23 in costs.

       7.   Automatic Increase of Damages for Failure to Pay

Pursuant to the NYLL:

> Any judgment or court order awarding remedies under this section
> shall provide that if any amounts remain unpaid upon the expiration
> of ninety days following issuance of judgment, or ninety days after
> expiration of the time to appeal and no appeal is then pending,
> whichever is later, the total amount of judgment shall automatically
> increase by fifteen percent.

N.Y. LAB. LAW § 198(4).  In light of the court's award of damages against defendants, an order

providing for an automatic increase in accordance with § 198(4) is warranted.  Accordingly, if

any amounts remain unpaid ninety days after expiration of the time to appeal, and no appeal is

then pending, the total amount of the judgment shall automatically increase by fifteen percent.

## CONCLUSION

For the reasons stated above, I respectfully recommend that plaintiffs' motion be

granted and that default judgments be entered against both defendants jointly and severally.

Regarding damages, I respectfully recommend that plaintiffs be awarded $155,936.01, consisting

of $62,418.39 in compensatory damages for unpaid wages, $62,418.39 in liquidated damages,

$10,000 in statutory damages for wage statement violations, $20,000 in attorney's fees, and

$1,099.23 in costs, plus pre- and post- judgment interest.  Any objections to this report and

recommendation must be filed electronically or with the Clerk of Court, with courtesy copies to

Judge Irizarry and to my chambers, within fourteen (14) days.  Failure to file objections within

the specified time waives the right to appeal the district court's order.  <u>See</u> 28 U.S.C. §

636(b)(1); FED. R. CIV. P. 72, 6(a), 6(d).

Respectfully submitted,

/s/ Robert M. Levy
_____
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
      August 20, 2021